Mr. Justice Clayton
delivered the opinion of the court.
This was a bill filed, in the superior court of chancery, by the Bank of the United States against the state, to enjoin the collection of a tax assessed upon a loan of $250,000, made by the complainant to the Commercial and Railroad Bank of Vicksburg. The bill alleges that this loan does not fall within the act passed in February, 1841, to provide for the revenue of the state, and that the assessment and attempt to levy the tax are illegal and unauthorized. The injunction was granted, but afterwards dissolved upon motion, and the case thence comes to this court.
Every government has the unquestionable right to raise a revenue for its support by taxation upon the property within its limits. It is indispensable to its existence, and is the price paid for protection. Those who have property in the state look to the government for its security, and for the means of enforcing *458 contracts in regard to it. What the state thus protects and regulates, it has the right to tax. This power has its foundation in society itself; it is granted by all, for the benefit of all. See Prov. Bank v. Billings, 4 Peters, 563.
Indeed, it is not denied in the argument, that the state might have imposed a tax upon this loan, but it is said that it has not done so. This will render an examination of the law necessary.
The first section of the act declares, “that the following taxes shall be assessed and collected within this state, viz.: an ad valorem tax of one fourth of one per cent, on all lands in this state;,on all money loaned at interest by individuals, or employed by them in the purchase of notes, bonds, checks or bills of credit of any description whatever, as security for money advanced; on all bank stock subscribed for in any incorporated bank in this state, which shall not have paid a bonus for the charter, or have been exempted by the provisions thereof, except stock subscribed for arid owned by the state, or some incorporated, literary or charitable institution. The second section provides that certain property shall be exempt from taxation, but has no reference to money loaned.
The fifth section provides, that if any assessor shall be of opinion, that any property under the provisions of this act, subject to ad valorem taxation, or if the owner of property be a non-resident "of this state, such assessor shall put a fair valuation on such property, “ subject to the right of appeal to the board of police of the proper county.” There is an omission observable in this section, which however does not affect the point in controversy.
The object of this law appears to have been, to impose a tax on all property, and on all money loaned in this state, with certain exceptions, without any express reference to the residence of the owners. The terms employed are general, and there seems no reason to presume a discrimination in favor of non-residents.
But the principal controversy is in regard to the meaning of the term individuals. It is insisted that the words “loaned by individuals,” were intended to exclude banks, and that foreign *459 banks are excluded by them, as well as those incorporated by this state. That the term individuals is used in contradistinction to corporations, and was intended by the legislature to confine the operation of the statute in this respect to natural persons. The intention of the legislature, derived from the language employed, must govern the construction. This makes it necessary to fix the legal meaning of that term.
At an early day, it was the understanding of the profession, that the word person in a statute did not include corporations. Lord Bacon’s Reading on the Statute of Uses, 4 Bacon’s Works, 187,199. But a different view was soon afterwards entertained, and the long settled construction now is, that corporations are embraced in that, and in some other general terms. 2 Co. Ins. 703; Commercial Bank of Manchester v. Nolan, 7 How. 524, and cases cited. There is no reason why a similar interpretation should not be given to the term individual. Its literal signification is not divided, and by an easy transition it is made to mean united, unity, a state of oneness. Chief Justice Marshall says, “ among the most important properties of a corporation, are immortality, and, if the expression may be allowed, individuality, by which a perpetual succession of many persons are considered as the same, and may act as a single individual. 4 Wheat. 636. Again he says: “The grand object of an incorporation is to bestow the character and properties of individuality on a collective and changing body of men.” 4 Peters, 562. A late eminent jurist called a corporation “a personification of certain legal rights under a description imposed upon it, by the power which created it.” — “ Residence, habitancy, and individuality are all qualities of a corporation.” Louisville Railroad Co. v. Letson, 2 How. S. C. Rep. 559. In Donnaher v. The State, 8 S. & M. 661, this court, upon the authority of a case in New York, called a corporation “ an ideal individual.”
It is conceded, however, in the argument, that the term individual, when used in a general sense, may comprehend a corporation ; but it is urged, that the context here shows that such 'meaning is excluded.
The object of the act appears to have been to subject almost *460 every species of property in the state to taxation. It imposes a tax on all money loaned, with but one express exception, and that was in favor of banks incorporated by this state. With reference to them, it was the intention to tax the capital stock, instead of the'money loaned; and this stock is taxed, unless when the bank has paid a bonus for its charter, or unless the charter itself exempts the stock from taxation, or unless the stock be owned by the state. The term individuals may thus stand in contradistinction to banks incorporated by this state, but no design is manifested to discriminate farther. A particular reason exists for this ; the intention to tax their stock, rather than the money they might loan. But this reason does not extend to foreign banks; their stock could not be taxed, and there is no just ground to say, that they are not embraced in a term, which by legitimate and acknowledged construction may comprehend them. It would afford them an exemption not extended to natural persons, resident either in this or in another state, nor to banks incorporated by this state.
The exceptions contained both in the first and second sections of the statute, go far to show that all property not falling under those exceptions, is liable to the tax, upon the familiar principle, that the exception of one, is the exclusion of another. All this would not authorize us to say, that foreign banks should be liable to the tax upon money loaned in this state, if the words of the act were not such as might include them. But as they may, it is our duty so to declare. And in this we act upon no principle that is now in this court, since we have measured out to banks the same justice, and applied to them the same principles which govern natural persons, in every case, where it was practicable.
The term individual may be, and often is used, in contradistinction to banks or corporations, but there is no necessary and invariable opposition of ideas in the term itself.
It is true, there are expressions in the statute, which cannot properly be referred to a bank. But we are told, “that in construing statutes, judges are to look at the language of the whole act, and if they find in any particular clause, an expression not *461 so large and extensive in its import, as those used in other parts of the act, and, upon a view of the whole act, they can collect from the more large and extensive expressions used in other parts, the real intention of the legislature, it is their duty to/ give effect to the larger expressions.” Dwarris on Statutes, 74; 7 Barn. & Cress. 643; 14 Eng. Com. Law Rep. 10S. Chancellor Kent thus states the same rule. “ The intention of the lawgiver is to be deduced, from a view of the whole, and of every part of a statute, taken and compared together. The real intention, when accurately ascertained, will always prevail over the literal sense of terms.” 1 Com. 462. Taking this for our guide, we think the case falls within the intention of the legislature.
It may be, that a case of this character was not in the contemplation of the legislature, when the act was framed; yet, if the language employed comprehends it, it is not the less within its influence. The very object of using general terms in a statute, is to embrace particular cases which cannot be foreseen. Dwar-ris, 728. Many of the cases which have arisen in regard to the construction of the Federal Constitution, would have been excluded from the operation of that instrument, if it had been confined to such cases as were in the contemplation of the convention, when it was adopted.
But it was argued, that this money was loaned before the passage of the law. The law operates upon all property within the state, which comes within its provisions, without regard to the time of its introduction.
Again it is said, if the money be not repaid, according to the contract, it then becomes an ordinary debt, and is not the subject of the tax. That case is not presented by the bill, and we therefore need not decide it, but we may be permitted to say, that we do not now perceive the force of the objection. The failure to pay does not alter the character of the transaction, or change the consideration of the debt. Nor is it necessary to say, what would be the effect of a loan made out of the state, to a citizen of this state, as that point is not presented by the bill.
Nor need we say what effect the insolvency of the debtor will have upon the tax, farther than to remark, that in such case, if *462 the assessor reports the debt at more than its value, the party has his remedy under the law, by appeal to the board of police. If the debtor be insolvent, and the debt valueless, it cannot be the subject of taxation. On the whole, the decree of the chancellor dissolving the injunction, is affirmed.